THE RAILROAD AND WAREHOUSE COMMISSION OF ILLINOIS *ex rel.* The East Side Packing Company, Appellee, *vs.* THE VANDALIA RAILROAD COMPANY, Appellant.

*Opinion filed April 19, 1913.*

1. RAILROAD AND WAREHOUSE COMMISSION—*jurisdiction of the Railroad and Warehouse Commission.* The act establishing the Railroad and Warehouse Commission expressly gives it jurisdiction over all common carriers within the State and authorizes it to establish reasonable switching rules and regulations and reasonable rates therefor, and to hear and determine all questions arising under the act.

2. SAME—*what does not relate to the question of jurisdiction.* The fact that the Railroad and Warehouse Commission cannot compel a railroad company to perform a service for its patrons without compensation has no relation to the question of the jurisdiction of the commission to hear a case and decide what is a legal or reasonable charge for such service.

3. SAME—*railroad company, when switching cars in city, acts as a common carrier.* A railroad company, when switching cars within a city, acts as a common carrier, the same as when engaged in moving cars between stations.

4. SAME—*railroad company may make only a single charge for switching service.* A railroad company is entitled to make only a single charge for switching service, and is not entitled to demand, in addition to its regular switching charge, a specific sum per car, as car rental, for switching service between industries on its lines or to industries or deliveries on other lines.

5. Same—*when decision does not deprive railroad company of its property.*  A decision by the Railroad and Warehouse Commission that a railroad company is not entitled to make two separate charges for the same switching service, but which does not attempt to limit the amount of the single charge for such service, does not amount in any way to the taking of the company's property without compensation.

6. Same—*what is meant by term "transportation."*  The term "transportation," as universally understood and as defined by our statute, includes cars and other vehicles and all instrumentalities and facilities of shipment or carriage, and while a railroad company may make one charge for transporting a car on its own line and a separate switching charge, if both are reasonable, it cannot make separate charges for the same switching service.

Dunn, C. J., dissenting.

Appeal from the Circuit Court of Sangamon county; the Hon. Robert B. Shirley, Judge, presiding.

Fordyce, Holliday & White, and McAnulty & Allen, for appellant.

William B. Moulton, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

One of the numerous railroad companies owning and operating lines of railroad in the city of East St. Louis is the appellant, the Vandalia Railroad Company.  The railroad companies have established a regular switching charge of three dollars per car for doing switching service in the city and delivering cars to industries on their own or other lines or to or from connecting lines.  The appellant has demanded and collected, in addition to the regular switching charge so established, a charge of two dollars as rental of each car switched by it for the East Side Packing Company, which conducts a packing plant on its switch track in the city.  The charge has been made under the following provision of appellant's tariff:

"Rule 2.  *Car rental.*—A charge of two dollars per car (car rental) will be assessed in addition to the regular switching rate on cars furnished by the Vandalia railroad for movement in switching service between industries on its lines or to industries or deliveries on other lines."

The East Side Packing Company filed its complaint with the Railroad and Warehouse Commission, alleging that this charge for car rental was illegal and asking for an order prohibiting appellant from demanding or collecting it. The appellant answered the complaint, and after a hearing the commission made an order on January 18, 1912, that the appellant should desist from demanding, collecting or receiving any car rental in addition to its regular published tariff rate for switching. The appellant removed the case, by appeal, to the circuit court of Sangamon county, where the order of the commission was affirmed, and a further appeal was taken to this court.

Counsel for the appellant have filed a brief in accordance with the rules of the court, concluding with the points made, numbered from "I" to "VIII," inclusive, and stating under each point the authorities relied upon in support of it. The rules permit an argument in support of the brief, which must be confined to discussion and elaboration of the points contained in the brief. In this case the brief is followed by an argument containing subdivisions numbered from "I" to "V," inclusive, in which the order of the points contained in the brief is not followed and some of the propositions stated and contended for are different and placed on different grounds. The result is somewhat confusing, but an effort will be made to state fairly and dispose of all the propositions of counsel for appellant, whether contained in the brief or argument.

The answer filed with the commission stated: (1) That the commission had no jurisdiction, because the appellant, as a common carrier, was not required to perform the switching service, and for doing voluntarily what the law

did not require, it could impose such terms as it desired, which would not be subject to review or adjustment by the commission, and further, the appellant could not compel other railroads to handle cars switched by it to their lines, and the commission could not compel it to take cars for points on other lines or fix the terms upon which it should take them; (2) that the charge for car rental was just and reasonable; (3) that the charge did not infringe any rule adopted by the commission, and any rule requiring the appellant to abolish the charge would be beyond the jurisdiction of the commission and contrary to the provisions of the State and Federal constitutions. In the brief filed here several of the points are stated and numbered as follows: (2) The commission is without authority to compel the appellant to perform a service without compensation, and is therefore without jurisdiction; (3) the commission is a tribunal possessing naked statutory powers, which are administrative and ministerial and neither legislative nor judicial; (4) jurisdiction of the commission must be confined to the cases clearly placed within its jurisdiction by the statute; (5) the law does not compel a railroad company to send its cars onto the rails of another road. The second division of the argument is devoted to the question whether the commission had jurisdiction, and all of the above points are there re-stated as showing that it was without jurisdiction to act in the matter.

Taking up the second proposition of the brief, the fact that the commission cannot compel the railroad company to perform a service for its patrons without compensation has no relation to the question of jurisdiction to hear a case and decide what is a legal or illegal, a reasonable or unreasonable, charge for a service. If the proposition has any relation to the case, it only concerns the correctness of the finding that the appellant must perform the switching service for the regular switching charge. It is true, as stated in the third and fourth points of the brief, that the

commission possesses only statutory powers and its juris-
diction is confined to the exercise of such powers, but the
jurisdiction exercised in this case is conferred by statute.
The appellant is a common carrier and acts as such when
engaged in switching cars in East St. Louis exactly as it
does when moving cars between stations. By the act es-
tablishing the Board of Railroad and Warehouse Commis-
sioners and prescribing their powers and duties the commis-
sion is expressly given jurisdiction over all common carriers
within the State, and is authorized to establish reasonable
switching rules and regulations and reasonable rates there-
for, and to hear and determine all questions arising under
the act.

The fifth point of the brief, that the law does not com-
pel a railroad company to send its cars upon the rails of
another road, has nothing to do with the question of juris-
diction. The argument repeats what was contained in the
answer filed with the commission, as above stated, and
counsel contend that because appellant cannot, by law, be
compelled to permit its cars to leave its tracks, the switch-
ing service is not a public duty but a matter of private con-
tract between the parties interested, like transporting goods
by teams or gasoline trucks, and therefore the commission
had no jurisdiction over the question of the charges for
doing the service. Whether, in view of the universal and
necessary practice of connecting roads, a railroad company
accepting a shipment beyond its lines could be compelled to
let its cars go through without unloading and re-shipping is
not involved here. It did not concern the packing company,
which paid connecting lines for transportation, whether the
connecting carriers unloaded its property into cars of their
own or whether the two lines used the cars of each other
under some plan of compensation adopted by themselves.
Perhaps there is no danger that they will ever adopt a rule
by which goods will be unloaded at each junction, which
would be as much against the interest and convenience of

258 — 26

railroad companies as anything that could be imagined. Whether the appellant could be compelled to do the switching service or not, it does perform the service and performs it as a common carrier. Whether it uses its own cars or the cars of some other company is of no interest to the shipper, and there has been no attempt to force appellant to permit its cars to go beyond its rails. It accepts cars for shipment over connecting lines, and the only question here is what is a legal charge for the service. The commission had jurisdiction to hear and decide the case.

The sixth point of the brief is, that the State cannot, directly or through the medium of the commission, make rates so low as to deprive the appellant of a fair and reasonable remuneration, and the third division of the argument, which apparently relates to the same subject, presents the proposition that the assumption of jurisdiction and the order of the commission are unconstitutional in violating the fourteenth amendment of the constitution of the United States. It is argued that the order amounted to an unlawful taking of property, contrary to the fourteenth amendment; but there is no question in the case of taking property at all, or even what would be a fair and just remuneration for the service performed. In the finding and order of the commission it was stated that if the charge for switching was not remunerative the appellant should make a charge that would be remunerative, and such a charge would be allowed and sustained by the commission, if reasonable. The decision was that the appellant could make only a single charge for the switching service, and it was ordered to desist from charging, demanding, collecting or receiving separate charges for the same service. Neither the commission nor the circuit court held that appellant was limited to three dollars, or any other sum, for a switching service, and the fourteenth amendment is not involved in any manner. In *Louisville and Nashville Railroad Co.* v. *Central Stock Yards Co.* 212 U. S. 132, a requirement that the

railroad company should deliver its cars to another where there was a physical connection between the two roads deprived the railroad company of property contrary to the Federal constitution, but it was because the requirement contained no adequate protection from loss or undue detention of cars or compensation for their use.  In this case there is no question but that the appellant is entitled to fair compensation for the service performed nor any decision as to the amount that could be charged, and the decision in that case has no relation to the question here involved.  The question to be decided is whether the appellant may lawfully divide up its charges for the service of switching cars in the city of East St. Louis to different industries or to connecting lines for shipment.  There is no dispute of the proposition that a railroad company may make a distinct charge for carriage from a point on its line to the place of destination, and if the car is to go beyond its lines may ·make a separate terminal charge for delivery.  That was decided in the case of *Inter-State Commerce Commission v. Chicago, Burlington and Quincy Railroad Co.* 136 U. S. 132, where it was held that a through rate and a separate terminal charge might be made if the two were just and reasonable when considered separately as distinct charges. While a railroad company may make one charge for transporting a car on its own line and a separate terminal charge of the same nature as the switching charge established in East St. Louis, no case has been found by counsel where it was held that in either case the charge could be divided up and charges made for the various elements of the service.  Our statute defines the term "transportation" as including cars and other vehicles and all instrumentalities and facilities of shipment or carriage, and that is the universally accepted meaning of the term.  There is no perceptible difference between dividing charges for shipment on the line of a road and dividing the terminal charge.  In either case the carrier must furnish the car, take it to the place to be

loaded, go after it and take it away. If it could do. what the appellant attempted, it could charge for transportation and then charge separately for each of these services. It could also charge for the use of its engine, the use of its tracks, use of its cars, the amount of coal consumed, and the wages of the engineer, fireman and switchman. If such charges would be legal within the switching limits of the city of East St. Louis they would be equally lawful outside of the city on appellant's line of railroad. The public interest demands that there should be a single charge for such a service, and in our opinion the commission and circuit court decided the question correctly.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE DUNN, dissenting.