168 So. 171

**ANDERSON v. LEWTER.**

8 Div. 707.

Supreme Court of Alabama.

May 14, 1936.

Watts & White, of Huntsville, for appellant.

Taylor, Richardson & Sparkman, of Huntsville, for appellee.

BOULDIN, Justice.

The bill was filed by the widow of a decedent with the ultimate purpose of assigning dower and homestead in lands owned by the decedent prior to the marriage. To this end the amended bill sought to cancel deeds to such lands alleged to have been executed by decedent before marriage, in so far as such deeds cut off such dower and homestead rights, because the deeds were made in contemplation of marriage with complainant, and in fraud of her prospective marital rights in such lands. ·

Three deeds were executed by decedent, D. A. Lewter, to his son, J. Malcolm Lewter, the appellee. One deed, executed December 2, 1922, conveyed 200 acres of farm lands, on a recited consideration of $2,000 cash. A second deed, executed December 4, 1922, conveyed 398 acres of farm lands on a recited consideration of $1, and the assumption of an outstanding mortgage of $2,000. The third deed, executed also on December 4, 1922, conveyed certain adjoining lots in the city of Huntsville on a recited consideration of $700.

Complainant, Jimmie A. Anderson, and D. A. Lewter were married March, 1924. They lived together as husband and wife until July, 1926, when they separate, and so continued until the husband's death June 21, 1934.

The original bill was filed July 14, 1934, charging these deeds were really executed after marriage and antedated to defeat complainant's dower and homestead rights. The bill was amended May 23, 1935, charging the deeds bear their true dates, but were made pending courtship in which the grantor claimed to · own the properties, showed them to complainant as his farm, leading plaintiff to believe he owned them, and while both were contemplating marriage, executed the deeds in anticipation of marriage and with the intent to defraud her of marital rights in the lands. The amended bill further charges that the grantee, the son of the grantor, knew that negotiations were in progress looking to marriage when the deeds were made, and that they were made for the purpose of depriving the intended wife of her rights in the property to accrue on her marriage; that the deeds were withheld from the record for purposes of concealment; that complainant knew nothing of such deeds until after the husband's death. In the alternative, the bill avers the conveyances were voluntary, or for merely nominal value.

The answer put in issue all these allegations.

The evidence was addressed to three issues of fact: First, whether, in fact, courtship and contemplated marriage were in progress at the time these deeds were made. Second, whether the grantee had knowledge of such courtship and contemplated marriage at the time the deeds were executed, or at any time before the marriage was consummated. Third, whether there was a bona fide valuable consideration for the deeds.

The testimony was taken orally before the trial court, sitting without a jury. He denied complainant relief. His findings, for reasons ofttimes stated, are to be accorded the same presumptions as the verdict of a jury.

We have carefully considered the evidence, its several tendencies, and reasonable inferences. A detailed recital or discussion would serve no good purpose.

Applying the rules of review in such cases, we conclude the finding of the trial judge should not be disturbed.

█ This decision might end here, but we are impressed that certain facts, in pleading and evidence, call for discussion of certain legal principles, lest our decision be misleading.

The leading case in Alabama on bills in equity attacking conveyances made in contemplation of marriage with intent to defeat the prospective rights of the intended wife in the property of the husband is Kelly v. McGrath, 70 Ala. 75, 45 Am. Rep. 75, wherein Chief Justice Brickell discussed, with his usual learning and sound reasoning, the legal principles involved. Other later cases are: Nelson v. Brown, 164 Ala. 397, 51 So. 360, 137 Am.St.Rep. 61; Cannon v. Birmingham Trust & Savings Co., 194 Ala. 469, 69 So. 934; Lewis et al. v. Davis, 198 Ala. 81, 73 So. 419; Sibley v. Kennedy et al., 224 Ala. 354, 140 So. 552.

In the instant case, the answer alleges and the evidence discloses that at the time of the death of the husband the wife had a separate estate in lands in excess of her dower interest in these lands, all the lands of which the husband was then seized, or was seized during coverture. Indeed, while not controlling perhaps, she owned such separate estate at the time of marriage, and such separate estate was approximately of equal value with that of the husband.

Now, if no conveyance had ever been made, and the husband had owned these lands at the time of his death, the wife would have taken no dower right therein. Code, § 7429.

Can the wife, after the death of the husband, and all dower rights have become fixed, set aside a conveyance before marriage for fraud, and thereby take dower in lands which she would not take if the husband still owned them at his death?

In Kelly v. McGrath, supra, the bill was filed by the wife during coverture. Emphasis is laid in the opinion on the fact that the wife has an inchoate right of dower, contingent on her survival of her husband, which a court of equity should protect. Such reasoning is entirely consistent with the idea that on the death of the husband she could take only such dower right as the law gave her in lands of which the husband was seized, or, but for his fraud, would have been seized during coverture.

But Jackson v. Isbell, 109 Ala. 100, 101, 19 So. 447, is relied upon as authority for the proposition that the wife's separate estate is not to be regarded in this case. That case involved a construction of sections 7448 and 7449, under which the wife is provided a remedy for recovery of her dower interest in lands aliened by the husband, voluntarily or by process of law, during coverture, and the measure of recovery is prescribed. The very pertinent reasoning of the case, one in which the husband's lands were sold under execution, discloses that a dower right existed, but was not conveyed nor paid for, that the purchaser, in such case, could not defeat dower as fixed by Code, § 7449, because it happened that the wife owned a separate estate at the time of the husband's death.

In the instant case, there was no alienation of the lands during coverture. The deeds were executed before any dower rights accrued. The gravamen of the action is to avoid these prenuptial deeds, so that, as for dower rights, they would stand as if no deeds were ever executed. We cannot give sanction to any higher claim here than if these conveyances had never been made. To do so is to create by the deeds to the son, dower rights in the wife, which she would not have against him as heir, had no deeds been executed.

█ What as to homestead? It fully appears that neither at the time of these deeds, nor at any later date, was any part of this land ever impressed with the character of a homestead of the husband.

The statute protects the interest of the wife in the shelter of an actual homestead. A conveyance of same by the husband is utterly void without her voluntary signature evidenced by her separate acknowledgment.

But lands of the husband, not his homestead, may be freely conveyed by him during coverture as for any homestead right of the wife.

How, then, can the wife, after the husband's death, complain of a conveyance before marriage, which the husband could lawfully have made after marriage? The homestead which the wife is now entitled

378

to, if any, is in the lands left by the decedent at his death. It comes into being at his death, and becomes fixed as of that date; a distinct estate from that taken in the homestead of husband and wife during his lifetime. Robertson v. Robertson, 147 Ala. 311, 40 So. 104, 3 L.R.A.(N.S.) 774, 10 Ann.Cas. 1051.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.