82 So.2d 528

**W. H. GRAY**

v.

**The FIRST NATIONAL BANK OF BIRMINGHAM.**

**6 Div. 643.**

Supreme Court of Alabama.

Sept. 22, 1955.

Morel Montgomery, Birmingham, for appellant.

Young, Aird & Young, Anniston, for appellee Allen.

362

GOODWYN, Justice.

This is an appeal from a final decree rendered by the circuit court of Jefferson County, in equity, in an interpleader proceeding brought by the First National Bank of Birmingham against W. H. Gray, appellant, Inez Allen, Mark H. Allen, and Virnell Allen.

For the purposes of this appeal, we think the following is an adequate statement of the case:

G (W. H. Gray) had a general checking account with the First National Bank. On April 17th he drew a check for $850 against his account payable to the order of M (Mark H. Allen) and V (Virnell Allen), and took it to the Bank for certification. The Bank certified the check and, in doing so, charged the $850 against G's account, at the same time crediting the $850 to the order of M and V, the payees named in the check, by transferring said sum to a certified check account. The certified check was then redelivered to G, who, during the afternoon of April 17th, delivered it to M and V in connection with the purchase of certain real estate by G from M. V was M's wife and, for that reason alone, was made a payee of the check. Later, on the same day, M and V negotiated the check back to G for full value paid by G. Prior to delivery of the check by G to M and V, a garnishment was served on the Bank at the instance of I (Inez Allen, divorced wife of Mark H. Allen) to subject any money or effects in the hands of the Bank belonging to M in satisfaction of a judgment for $1,840 recovered by I against M. At the time of delivery of the check by G to M and V, and also when the check was negotiated back to G, G had actual knowledge of the issuance and service of said writ of garnishment. We here observe that this question of knowledge was disputed by G. However, the trial court, after hearing the evidence ore tenus, found that G did have such knowledge; and there is ample evidence supporting that finding. On April 18th G presented the check to the Bank for payment. The Bank declined payment "because it did not know who, as between the payees (M and V), the garnishor (I), and the maker (G) who claimed to be the holder in due course, was entitled to the fund represented by said check."

Thereafter, the Bank filed its bill of interpleader, here involved, and deposited the $850 in court. The trial court decreed that said sum was subject to I's garnishment and that G was "not entitled to recover on said certified check or on the $850 fund held by the register or any part thereof." G prosecutes this appeal from that decree.

We here note that, prior to the filing of the interpleader, G brought action against the Bank in the Intermediate Civil Court of Birmingham to recover on the certified check. On the ground that that court had already acquired jurisdiction of the subject matter and the parties involved in the interpleader suit, G moved dismissal of the bill of interpleader. The overruling of that motion is assigned as error. However, the point is not sufficiently argued in brief to warrant discussion, and must, therefore, be considered as waived. Taunton v. Trammell, 254 Ala. 252, 254, 48 So.2d 190; Hall v. Esslinger, 235 Ala. 451, 456, 179 So. 639.

The one point for decision is whether the liability of the Bank on the certified check was subject to the garnishment served on the Bank at the instance of I, a judgment creditor of M. In other words, when M became a holder of the check did the Bank's liability to M as such holder then and there become subject to I's garnishment, with the garnishment having priority over the right of a subsequent holder with notice of the garnishment?

When a check is certified, it ceases to possess the character, or to perform the functions, of an ordinary check. It repre-

sents so much money on deposit, payable to the holder on demand; and " 'such a deposit stands upon exactly the same ground as any other.' " Walker v. Sellers, 201 Ala. 189, 77 So. 715; Lummus Cotton Gin Co. v. Walker, 195 Ala. 552, 555, 70 So. 754; National Commercial Bank v. Miller & Co., 77 Ala. 168, 174, 175, 54 Am.Rep. 50. The principle is thus recognized in the last cited case:

"A certified check has a distinctive character, as a species of commercial paper, and performs important functions in banking and commercial business. The certification constitutes a new and distinct contract between the holder and certifying bank, which becomes the debtor of, and only liable to the holder."

From Michie on Banks and Banking, Perm. Ed., Vol. 5 B, Ch. 9, Sect. 256a, pp. 16–17, 19, is the following statement of the principle:

"Upon the certification of a check the bank ceases to be the debtor of the drawer for the amount represented by the check, and becomes directly liable to the holder until discharged by payment, release, or the statute of limitations.

\* \* \* \* \* \*

"By the certification of a check the deposit which is represented by the check ceases to stand to the credit of the depositor, and passes to the credit of the check holder, who is thereafter a depositor to that amount, with the same, but no greater, rights than those of any other."

In 9 C.J.S., Banks and Banking, § 373, pp. 789–790, it is said that:

"Certification \* \* \* binds the bank as a direct promisor or debtor of the holder, and creates an original actionable liability against the bank. In other words, the certification, in legal contemplation, transfers the funds represented by the check from the credit of the maker to that of the payee or holder, and, to all intents and purposes, the

latter becomes a depositor of the drawee bank, with the rights and duties of one in such relation."

From 7 Am.Jur., Banks, § 561, p. 406, is the following:

"The well-established general rule is that the certification of a check by the bank upon which it is drawn makes the bank \* \* \* primarily liable to the holder of the check until discharged by payment, release, or the statute of limitations."

Cited in support of the text is the Alabama case of National Commercial Bank v. Miller & Co., supra.

See, also, 4 Am.Jur., Attachment and Garnishment, § 258, 1954 Cum. Supplement, p. 59, where it is said:

"It seems clear that if a bank certifies a check drawn by the depositor in favor of a third person, the deposit to the extent of such check is not thereafter subject to garnishment for a debt of the depositor. In such a case the bank becomes liable to the holder of the check."

Sections 181, 183, Tit. 39, Code 1940, 5 U.L.A., Negotiable Instruments, §§ 187, 189, provide as follows:

"§ 181. Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance."

"§ 183. A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until *it accepts or certifies the check*." [Emphasis supplied.]

█ The foregoing provisions of the Uniform Negotiable Instruments Law, as adopted in Alabama, make it clear that the certification by a bank of a depositor's check creates a liability on the bank to the holder of the check.

█ In the case before us, the garnishment was served on the Bank prior to de-

livery of the certified check by Gray to Allen. Upon such delivery, the Bank's liability to Allen as holder of the certified check became subject to the garnishment. Gray, having actual knowledge of the garnishment against Allen, did not become a holder in due course of the certified check when it was negotiated back to him, Code 1940, Tit. 39, § 54(4). Hence, he took it subject to the garnishment.

The decree appealed from is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MAYFIELD, JJ., concur.