315 So.2d 573

**William S. McDUFFIE**

v.

**William F. HOOPER.**

**SC 1259.**

Supreme Court of Alabama.

July 3, 1975.

Charles S. Conley, Montgomery, for appellant.

**294**

Harry D. Raymon, Tuskegee, for appellee.

SHORES, Justice.

William F. Hooper, William S. McDuffie, and Edward L. Pryce were, at all times material hereto, members of the faculty of the School of Architecture at Tuskegee Institute. On or about November 15, 1971, these three entered into an arrangement whereby they agreed to go into business together as a consulting firm. No written agreement was ever drawn up. The testimony was that the three decided to get in the business of consulting and agreed to split any profits from the business equally among them.

Shortly after the parties decided to go into business, a brochure was printed by McDuffie stating:

"WILLIAMS S. McDUFFIE, AIA
ARCHITECT & ASSOCIATES
"CONSULTANTS:

"EDWARD L. PRYCE
LANDSCAPE ARCHITECT & PLANNER

"WILLIAM F. HOOPER
ENGINEER & ARCHITECT"

The brochure contained a resume of each of the three.

In December of 1971, an agreement was entered into by "William S. McDuffie & Associates" with the Housing Authority of the City of Tuskegee, whereby architectural inspection services were to be rendered to the Housing Authority for a sum of $44,907. There was no dispute in the evidence that, after deducting expenses, the profits were split three ways up until August, 1972, when McDuffie, who was the administrative member of the group, refused to pay Hooper any more.

Hooper filed suit alleging that the three had entered into a partnership whereby the parties formed a business under the trade name of "William S. McDuffie & Associates," and that the partnership agreement provided for a one-third division of the profits, less expenses. McDuffie denied that a partnership had been formed, contended that Hooper and Pryce were his employees, and admitted that the profits were divided equally among the three up until he discharged Hooper. Pryce and Hooper denied that they were employees of McDuffie and testified that their arrangement was to get into the consulting business on an equal basis, and that all profits would be split three ways.

Hooper's version of the arrangement was supported by testimony from a member of the Housing Authority and by the general superintendent of the construction firm which built the project for the Hous-

ing Authority. He testified that he dealt with Mr. Hooper almost every day during the course of the project, and that Mr. Hooper approved or disapproved subcontractors, equipment and materials for the project. His testimony was that Mr. Hooper and Mr. Pryce were on the project continuously for the first four or five months, which he said was the critical period of a project such as this; and during this time they, and particularly Mr. Hooper, made all of the inspections and McDuffie never did anything with regard to the project. At the time McDuffie informed the general superintendent that Hooper would no longer be making inspections, the project was, for all practical purposes, complete, and that any subsequent inspections were made by himself, the general superintendent of the general contractor.

Hooper sought an accounting and the balance of one-third of the profits from the project.

The trial court heard the evidence, and entered a final judgment in Hooper's favor, finding:

"Upon consideration of the evidence in this cause, the Court is satisfied from the preponderance of the evidence that there was a joint venture among the parties whereby the parties . . . agreed among themselves to carry out the contract made in the name of William S. McDuffie and Associates with the Housing Authority of the City of Tuskegee whereby the said parties were to divide the proceeds of the contractual agreement into three equal parts after deduction of the expenses incurred by them in carrying out the terms of the contract. It appearing from the evidence that the Defendant, Edward L. Pryce, was not involved in any way in handling of any of the finances which finances were handled by the Defendant, William S. McDuffie, who received all of the proceeds of the contract and distributed the money according to the agreement, and

the said William S. McDuffie having filed in this Court a statement showing that Edward L. Pryce received the sum of $13,718.00 as his share of the proceeds from the project and that the Plaintiff, William F. Hooper, received only $6,344.26, but the Defendant, William S. McDuffie not seeing fit to reveal to the Court the amount received by him, the Court is of the opinion that the Plaintiff is entitled to recover of the Defendant, William S. McDuffie, the difference between the amount received by him of $6,344.26 and the amount received by the Defendant, Edward L. Pryce, who received $13,718.00, and the Court finds that the difference is $7,373.74."

This appeal is from that judgment.

Appellant argues that the trial court erred in finding that the parties had engaged in a joint venture to carry out the contract made with the Housing Authority of the City of Tuskegee, saying in brief, "even though the complainant had alleged, merely the existence of a partnership," and argues that the evidence fails to show that a partnership agreement was ever entered into.

It is not entirely clear from the assignments of error, nor from appellant's brief, whether he is arguing that there was no allegation of a joint venture, and that therefore that issue was not framed in the pleadings, or whether he is arguing that the court erred under the proof in finding that there was a joint venture among the parties.

■ If his argument is founded on the former proposition, we think that is answered by Rule 15(b), ARCP, which provides:

. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence

and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. . . ."

The appellant in the instant case made no objection at any time during the course of the trial, nor was any post-judgment motion on this point filed. It is abundantly clear, from reading the record, that there was no misunderstanding by anybody about what the case was being tried on. The Committee Comments to Rule 15(b) indicate that a dramatic departure from former Alabama practice was intended by the rule, with the observation that:

". . . Under the rule where evidence is introduced or an issue raised with the express consent of the other party, or without objection from him, the pleadings 'shall' be deemed amended to conform to such evidence. . . ."

It is difficult to understand just what appellant's point is. He would have been liable to the appellee whether the court found that the parties had entered into a partnership for the purpose of performing the contract with the Housing Authority, and would be equally liable if the court found from the evidence that they had entered into a joint venture agreement. Actually, there is evidence in the record from which the trial court could have concluded that the arrangement was either. Indeed, it is not always easy to distinguish between a joint venture and a partnership, as the following taken from 46 Am.Jur.2d, Joint Ventures, § 3, indicates:

"Joint ventures have been compared most often with partnerships. A distinction is recognized, but not by all authorities, and admittedly the distinction is difficult. . . .";

and, at § 4:

" . . . The relations of the parties to a joint venture and the nature of their association are so similar and closely akin to a partnership that it is ordinarily held that their rights, duties, and liabilities are to be tested by rules which are closely analogous to and substantially the same, if not exactly the same, as those which govern partnerships. In fact, it has been said that the trend in the law has been to blur the distinctions between a partnership and a joint venture, very little law being found applicable to one that does not apply to the other."

See: *Wilson v. Southside Shopping Center*, 280 Ala. 615, 197 So.2d 267 (1967).

At § 7, a joint venture is described as follows:

"There appears to be substantial agreement that in order to constitute a joint venture, the following factors must be present: a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise; expectation of profits, or the presence of adventure; a right to participate in the profits; and, usually, a limitation of the objective to a single undertaking or ad hoc enterprise. No specific or formal agreement is required. Whether persons have entered into a joint venture depends largely upon the terms of the particular agreement, upon the construction which the parties have given it, as indicated by the manner in which they have acted under it, and upon the nature of the undertaking, as well as upon other facts."

See also: *Saunders v. McDonough*, 191 Ala. 119, 67 So. 591 (1914); and *Anderson v. Blair*, 202 Ala. 209, 80 So. 31 (1918).

■■ All of the evidence in this case, other than that offered by the appellee, supports the trial court's finding that these three people, all professors in the School of Architecture at Tuskegee Institute, agreed to combine their efforts and skills in a common undertaking, with the under-

standing that they were to share equally in the profits of that undertaking. The appellant does not deny that they were to share the profits equally, but contends that both Hooper and Pryce were his employees. Both of them deny that they were his employees, but insist that they were all equal. The appellant supported his contention at the trial only with the brochure, which he had printed, and which carried his name as the principal, with the others listed as consultants. On appeal, he argues that Hooper could not have been a partner, nor have rendered architectural services other than as a consultant, for the reason that he, Hooper, was not, at the time the contract with the Housing Authority was entered into, registered as an architect by the State of Alabama. He argues in brief that Mr. Hooper obtained registration sometime subsequent to the date of the contract. The record, however, does not support appellant's argument. In fact, it indicates just the contrary. Appellant says in brief that the " . . . appellee had given false and misleading testimony at the trial, with reference to his registration as an architect, by obviously concealing the [fact] that he was not registered by the Board of Registration of Architects for the State of Alabama until March 15, 1972 . . . " This matter was not raised at the trial, and is, therefore, not before this court.

The trial court heard the evidence in this case. It concluded that such evidence indicated that there existed between the parties a joint venture agreement. All of the evidence in the record, save that offered by the appellant, supports that finding. It will not, therefore, be reversed here. *Bonded Builders & Supply Co. v. Long*, 288 Ala. 669, 264 So.2d 518 (1972).

The judgment appealed from is, therefore, affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and JONES, JJ., concur.